UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

---------------------------------------------------------

ROBERT J. KOLENCIK, Individually and as
ADMINISTRATOR of the ESTATE OF
MELISSA KOLENCIK,                              Civil Action No.:
                                               1:04-cv-03507-JOF

                        Plaintiff,

vs.

PROGRESSIVE PREFERRED INSURANCE
COMPANY and GULF INSURANCE
COMPANY,

                        Defendants.

---------------------------------------------------------

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND IN SUPPORT OF CROSSMOTION OF
DEFENDANT PROGRESSIVE PREFERRED INSURANCE COMPANY**

## INTRODUCTION

Progressive Preferred Insurance Company (hereinafter, "Progressive"), hereby submits the within memorandum of law in support of its motion for summary judgment in the above-entitled matter, and in opposition to the motion for summary judgment of plaintiff Robert Kolencik ("Kolencik").

Plaintiff brought this action seeking a declaration that Progressive, which issued a policy of liability insurance to T.I. Wood Enterprises, Inc. ("T.I. Wood"), a motor carrier, is obligated to pay the judgments he secured in the Superior Court of Georgia, Cobb County, against two dump truck drivers allegedly involved in a motor vehicle accident in which his wife was killed.  As set out below, Progressive submits that it has no duty to pay these judgments under its liability policy, since the drivers were not insured and dump trucks in question are not covered autos under the T.I. Wood policy.

With regard to a certification of insurance that Progressive filed with the state of Georgia, Progressive concedes that it would have an obligation to pay the amount of its financial security certification, but only if Kolencik proves that the drivers were acting as agents for Progressive's named insured, T.I. Wood, and were within the scope of that agency, at the time of the subject accident.  Progressive denies, however, that the drivers were acting within the scope of their agency at the time of the loss.  In the event that the Court concludes that the drivers were acting within the scope of their

2

agency, Progressive submits that, as a matter of law, its potential exposure under the state certification of insurance is limited to $100,000.

Kolencik has also brought a direct action against Progressive, pursuant to O.C.G.A. § 46-7-12, seeking a judgment declaring that T.I. Wood is vicariously liable for the accident. Progressive submits that, since the drivers were not operating their dump trucks within the scope of any agency relationship with T.I. Wood, T.I. Wood is not liable for their alleged negligence.

## STATEMENT OF FACTS

### The Parties

At all times relevant to this action, T.I. Wood was trucking company located in Temple, Georgia, operating tandem dump trucks hauling rock, sand, gravel and dirt. T.I. Wood performed these services exclusively within the state of Georgia. At one time earlier in its existence, T.I. Wood had held federal authority to operate as an interstate for-hire motor carrier. That authority, however, had expired effective February 12, 2001, approximately two and a half years before the accident in question.

In August, 2003, T.I. Wood contracted with HBW Development ("HBW") to haul dirt and construction debris from an HBW construction site in Cartersville to a dump site in Acworth. Since T.I. Wood did not have a sufficient supply of trucks and

drivers to accommodate HBW fully, T.I. Wood arranged for Jerry Yarbrough d/b/a/ J&J Trucking & Excavating ("Yarbrough"), a trucking company located in Chickamauga, Georgia, to provide additional dump trucks and drivers. Yarbrough provided three of his dump trucks and three of his employee drivers: Jody Liederman ("Liederman"), Darlene Sue Cleckner, ("Cleckner"), and Kenneth Burnham ("Burnham").

While Kolencik suggests (see plaintiff's brief in support of motion for summary judgment at 2, 5-6), that T.I. Wood rented the Yarbrough dump trucks, Progressive denies that. Tammy Wood, a principal of T.I. Wood, testified under oath that T.I. Wood did not rent Yarbrough's trucks, and had no intention of doing so. She conceded that she had Yarbrough fill out a "Truck Rental Form," but asserted that this was simply to obtain general contact information for Yarbrough. She conceded further that T.I. Wood's accounts indicated "equipment rental" with regard to payments to Yarbrough, but asserted that this was done on the advice of T.I. Wood's accountants for tax purposes, and that the payments should properly be considered "1099 subcontract labor" expenses.

### The Accident

On August 27, 2003, Liederman, Cleckner and Burnham hauled approximately ten loads of materials between Cartersville and Acworth, finishing their day's work at

4

6:30 P.M.  Under instructions from Yarbrough, the three of them then set out in their dump trucks, heading for a campground in Rockmart where they would spend the night at a trailer which Yarbrough had provided for their accommodations while they were working on the HBW job.

At approximately four minutes past 7:00 P.M. on August 27, 2003, a multi-vehicle accident occurred on State Road 92 in Cobb County, Georgia (the "Accident"). Melissa Kolencik, traveling northbound, swerved to avoid a car which had crossed into her lane from the southbound side of the road.  She lost control of her vehicle, spun into the southbound lane, and was struck and killed by the dump truck operated by Burnham.

Melissa Kolencik's husband, Robert J. Kolencik, suing individually and as administrator of the estate of Melissa Kolencik ("Kolencik"), filed an action for damages in the Superior Court of Cobb County, Georgia, civil action number 04-1-00549-40, on or about January 27, 2004 (the "Kolencik action").  Kolencik named as defendants T.I. Wood, Yarbrough, Cleckner, Burnham and Akil Nishica (the operator of the vehicle which allegedly crossed into Melissa Kolencik's path).  Kolencik has alleged that the car which Melissa Kolencik swerved to avoid was itself attempting to avoid a rear-end hit from another dump truck.  The two dump trucks allegedly involved in the Accident, a 1981 Ford, vehicle identification number VJ23222, and a

1981 Peterbilt, vehicle identification number P145090 (the "Yarbrough dump trucks"), were both owned by Yarbrough. Kolencik alleges further that Cleckner was operating the 1981 Ford and that Burnham was operating the 1981 Peterbilt at the time of the Accident.

Liability for the Accident is, however, disputed. Burnham concedes that he was operating the 1981 Peterbilt dump truck which struck and killed Melissa Kolencik, but maintains that he had no reasonable opportunity to avoid the collision when she crossed over the center dividing line into his lane. For her part, Cleckner denies that she was operating the 1981 Ford which was involved in the Accident.[1]

Summary judgment on liability was awarded in favor of Kolencik against Yarbrough, Cleckner and Burnham pursuant to plaintiff's unopposed motion (none of these defendants was represented by counsel at the time of the motion). Kolencik's action against T.I. Wood, however, is still pending in Cobb County, and the order granting summary judgment against the other defendants specifically provided that "[b]ecause plaintiff does not seek summary judgment in this motion with regards to defendants T.I. Wood Enterprises, Inc. and Nishica, these defendants are not required to counter plaintiff's showing and are not bound by the findings in this Order." (The

---

[1] Deposition of Darlene Sue Cleckner, dated Sept. 2, 2004 , attached to plaintiffs' Notice of Filing as Exhibit "Q," at 52:3-53:23, 54:13-55:1, 112:5-16, 119:23-120:3; Deposition of Kenneth Burnham, dated Sept. 2, 2004, attached to plaintiffs' Notice of

Order and Judgment of the Superior Court of Cobb County, State of Georgia, dated

Oct. 7, 2004, rendered in the matter of *Kolencik v. T.I. Wood Enterprises, Inc.*, Civil

Action No. 04-01-00549-40, is attached to plaintiff's complaint in the present matter

as Exhibit "C.")

### **The Progressive Policy**

Progressive issued commercial auto liability policy number CA 04196911-3 to

T.I. Wood (the "Progressive policy"), which was in effect from November 27, 2002 to

November 27, 2003, and which had a combined single liability limit of $1,000,000.

The Progressive policy coverage form, Form 1050, provides that the company will

pay damages for which an insured is legally liable because of an "accident."

"Accident" is defined, in pertinent part, as "a sudden, unexpected and unintended

event ... that causes bodily injury or property damage and arises out of the ownership,

maintenance or use of your insured auto."

The Progressive policy, therefore, provides no coverage for any liability which

does not arise from the ownership, maintenance or use of an "insured auto."  The

definition of "insured auto" is limited to vehicles which are listed on the policy

declarations, obtained as replacements for vehicles which become permanently

inoperable or where the named insured's ownership is terminated, or temporary

---

Filing as Exhibit "R," at 49:20-22, 51:13-20.

substitutes for listed vehicles which are unavailable due to breakdown, repair, servicing, loss, or destruction.

Neither of the Yarbrough dump trucks allegedly involved in the Accident is described in the Progressive policy declarations. Plaintiff has produced no evidence that either of the Yarbrough dump trucks was obtained by T.I. Wood as a replacement or temporary substitute for a T.I. Wood vehicle that was out of service.

The Progressive policy was a renewal of a policy which had been in place, and renewed annually, since 2000. While different endorsements were added and deleted over the years, and the declarations pages were amended to reflect these changes, the basic coverage terms and liability limit remained the same. Moreover, the Yarbrough dump trucks were never listed on the declarations pages at any time during the life of the policy.

In addition to renewing the policy on an annual basis, Progressive annually certified the policy to the United States Department of Transportation ("USDOT") by filing a Form BMC-91X (the "federal filing"). In addition, Progressive annually certified the Progressive policy to the state of Georgia by filing a "Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance" (also known as the "Form E" or the "state filing"). The filings served to put the federal and state governments on notice that Progressive provided at least the minimum amount of

financial responsibility required for T.I. Wood's trucking business under the applicable regulations.  Since T.I. Wood would be obligated, under either federal or Georgia law, to reimburse Progressive for any payments Progressive would not have to make but for the operation of the filings, the Progressive coverage form provides (at Part I, Limit of Liability, paragraph 1):

> [i]f we are required by any applicable filing which we have made on your behalf to provide coverage not otherwise provided by this policy under this PART 1 - LIABILITY TO OTHERS, to any person or organization, the coverage provided hereunder for such person shall be the minimum coverage required by law.  If we are required to make any payment under this policy that would not have been made except for the certification, you must reimburse us.

## ARGUMENT

## INTRODUCTION

Plaintiff asserts, in the context of his direct action against Progressive under O.C.G.A. § 46-7-12, that T.I. Wood is vicariously liable for his alleged damages, because Cleckner and Burnham were acting as T.I. Wood's agents at the time of the Accident.  Progressive submits that there can be no vicarious liability for T.I. Wood, because the drivers were not acting within the scope of their agency.  Alternatively, Progressive submits that the plaintiff's motion for summary judgment on this count must be denied, because there are material questions of fact as to whether the drivers acted negligently.

If the Court determines that T.I. Wood is vicariously liable for Kolencik's damages, the issue becomes the extent of Progressive's exposure for those damages. Progressive submits that it has no obligations under its basic policy language, because the Yarbrough dump trucks do not qualify as covered autos under that policy. Progressive submits further that it has no obligations under its federal filing, because the Accident involved trucking operations which were purely intrastate in nature. Finally, Progressive submits that, even if its state filing is applicable to Kolencik's damages in this case, Progressive's obligation under that state filing is limited to $100,000.

## POINT I

## THE YARBROUGH DRIVERS WERE NOT ACTING AS AGENTS OF T.I. WOOD AT THE TIME OF THE ACCIDENT.

It is undisputed that, at the time the Accident occurred, Cleckner and Burnham had completed their duties for the day with regard to the HBW project.  It is further undisputed that, upon completion of their hauling duties for the day, they were instructed, not by T.I. Wood, but by Yarbrough to proceed in tandem to the campgrounds where they were to spend the night.

Since, at the time of the Accident, Cleckner and Burnham were acting under the direction of Yarbrough, and their activities were not advancing the commercial interests of T.I. Wood in any way, T.I. Wood cannot be held vicariously liable for their conduct in the Accident.  *See Wright v. Transus, Inc.*, 209 Ga. App. 771, 773, 434 S.E.2d 786, 789, *cert. denied* (1993), holding that whether the driver was acting in the motor carrier's business was a question of fact material to the motor carrier's vicarious liability ("Certainly the lease of a vehicle by the carrier, as opposed to its ownership, does not control the question whether the driver was engaged in the carrier's business, under the evidence in this case.").  *See also Great West Casualty Co. v. Norris*, 734 F.2d 697 (11th Cir. 1984) ("A plain reading of the statute simply will not support a holding that a carrier must provide individual liability coverage for its servants or agents while those agents are operating the carrier's vehicles outside the

11

scope of their employment."); *Curtis, Inc. v. Kelley*, 167 Ga. App. 118, 305 S.E.2d 828, *cert. denied* (1983) ("The test is not that the act of the servant was done during the existence of the employment, but whether the servant was at that time serving the master.") (italics, internal quotation marks and citations omitted).

The undisputed fact that Cleckner and Burnham were finished with their work for T.I. Wood, and on their way back to the temporary residence provided by Yarbrough, shows conclusively that they were not serving the interests of T.I. Wood at the time of the Accident. *See Jones v. Aldrich Co.*, 188 Ga. App. 581, 373 S.E.2d 649 *cert. denied* (1988) ("As a general rule, a servant in going to and from his work in an automobile acts only for his own purposes and not for those of his employer, and consequently the employer is not to be held liable for an injury occasioned while the servant is en route to or from his work.") (citations and internal quotation marks omitted); *accord*, *Wright v. Pine Hills Country Club, Inc.*, 261 Ga. App. 748, 583 S.E.2d 569 (2003) ("With regard to commuting to and from work, the general rule is that the employee is acting for himself at that time and, therefore, the employer is not to be held liable for an injury occurring during that time.").

Progressive submits, therefore, that T.I. Wood has no liability for any negligent conduct on the part of Cleckner or Burnham which caused the Accident. As set out below, the Yarbrough trucks operated by Cleckner and Burnham do not qualify as

insured autos under the Progressive policy, and consequently Cleckner and Burnham do not qualify as insureds under the policy. The Progressive policy, therefore, provides no coverage for the Accident. Finally, since Cleckner and Burnham were not acting within the scope of any agency relationship with Progressive's named insured T.I. Wood at the time of the Accident, Progressive has no obligation under either its federal or state filings to pay any judgment against Cleckner or Burnham arising from the Accident. *Spicer v. American Home Assurance Co.*, 292 F. Supp. 27, 31 (N.D. Ga. 1967), *aff'd sub nom American Home Assurance Co. v. Spicer*, 402 F.2d 988 (5th Cir. 1968), *cert. denied*, 394 U.S. 946, 89 S. Ct. 1275, 22 L. Ed.2d 479 (1969) ("[I]f the motor carrier could not be liable because of a failure of agency of a particular employee in the accident in question, the insurance company may be protected thereby.").

Furthermore, to the extent plaintiff seeks judgment, pursuant to O.C.G.A. § 46-7-12, declaring that T.I. Wood is vicariously liable, plaintiff's motion for summary judgment should be denied. As stated above, the evidence demonstrates that Cleckner and Burnham were not acting within the scope of their agency relationship (if any) with T.I. Wood at the time of the Accident. Moreover, there is a material question of fact as to whether negligence on the part of Cleckner and/or Burnham was a proximate cause of the injuries to Melissa Kolencik. Burnham has testified under oath that he

had no reasonable opportunity to avoid the collision when Melissa Kolencik's vehicle spun out and crossed the center dividing line into his lane of traffic.  Cleckner has testified under oath that she was not involved in the Accident at all.  If the putative agents were not liable, the summary judgment against them in the Cobb County action notwithstanding, the putative principal T.I. Wood (which is not bound by the findings of the Cobb County court, by the express terms of the court's own order) cannot be vicariously liable.

Plaintiff argues that Progressive is bound by his unopposed award of summary judgment in the Cobb County action, even if T.I. Wood is not bound, because Progressive chose not to defend Cleckner, Burnham or Yarbrough in that action.  This argument is without merit.  Progressive was not a party to the Cobb County action, and was not obligated to defend Cleckner and Burnham in that action in order to preserve its right to question their liability in a direct action brought against Progressive by the plaintiff.

## POINT II

**PROGRESSIVE HAS NO OBLIGATIONS UNDER ITS BASIC POLICY TERMS TO PAY ANY JUDGMENT IN FAVOR OF PLAINTIFFS, BECAUSE THE YARBROUGH TRUCKS DID NOT QUALIFY AS "INSURED AUTOS" UNDER THE PROGRESSIVE POLICY.**

Progressive issued the referenced policy to T.I. Wood Enterprises, Inc, with a combined single limit of $1 million, which was in effect from 11/27/02 to 11/27/03. The Progressive policy provides that the company will pay damages for which an insured is legally liable because of an "accident."  "Accident" is defined as "a sudden, unexpected and unintended event ... that causes bodily injury or property damage and arises out of the ownership, maintenance or use of your insured auto."  Therefore, by definition, the policy provides no coverage if liability does not arise from the operation, maintenance or use of an "insured auto."  Thus, regardless of whether its insured bears liability, Progressive's basic policy provides no coverage.

The definition of "insured auto" under the referenced Progressive policy includes only vehicles described in the declarations, replacement vehicles, and vehicles used as temporary substitutes for other vehicles in need of service or repair. Neither of the J&J Trucking dump trucks involved in the accident is listed on the Progressive declarations.  Kolencik has not even alleged that T.I. Wood had obtained

15

these vehicles as substitutes for other vehicles which were out of commission. Accordingly, no coverage is available under the policy.

Since the basic Progressive policy provides no coverage for the Accident, the only possible obligation Progressive may have is limited to the amounts mandated under any regulatory filing which may be applicable to the loss. *See Ross v. Stephens,* 269 Ga. 266, 496 S.E.2d 705 (1998):

> By executing the "Form F" endorsement, [the insurer] agreed to provide the automobile bodily injury and property damage liability coverage for losses caused by the motor common carrier's vehicles not specifically identified in the insurance policy that PSC Rule 1-8-1-.01 required. The endorsement went on to limit [the insurer's] liability regarding coverage for the unidentified vehicles to that which was required by the PSC regulation: $100,000 per person injured or killed, with a $300,000 maximum per incident.

*See also Driskell v. Empire Fire & Marine Ins. Co.*, 249 Ga. App. 56, 547 S.E.2d 360, *cert. denied* (2001):

> In *Ross v. Stephens,* the Supreme Court of Georgia held that an insurer's liability under a Form F endorsement is limited to that which is required by statute rather than to the policy limits which apply to vehicles described in the policy.

> The Harrises' position is that Empire waived or is estopped to invoke the limitation of liability under the Form F endorsement because it has represented and admitted that the policy it issued to Metro provided $1,000,000 in coverage.

> But Empire has consistently and correctly asserted, both before this suit was instituted and in its pleadings and discovery responses, that the policy's $1,000,000 coverage does not apply to the unlisted vehicle

operated by Saucer. Therefore, even assuming that the doctrine of waiver or estoppel could be used to expand the dollar amount of coverage provided by a liability insurance policy, there is no basis for enlarging coverage here.

As plaintiff has correctly observed, the Progressive policy provides:

> [i]f we are required by any applicable filing which we have made on your behalf to provide coverage not otherwise provided by this policy under this PART 1 - LIABILITY TO OTHERS, to any person or organization, the coverage provided hereunder for such person shall be the minimum coverage required by law.  If we are required to make any payment under this policy that would not have been made except for the certification, you must reimburse us.

In an extended and twisted argument, however (see plaintiff's brief in support of his motion for summary judgment at 36-42), plaintiff attempts to assert that the above-cited provision, which is clearly and unambiguously intended to restrict Progressive's exposure, is somehow ambiguous and has the effect of increasing Progressive's exposure. *See Saint Paul-Mercury Indem. Co. v. Rutland*, 225 F.2d 689, 691 (5th Cir. 1955) ("It is true that Georgia also follows the general rule which decrees that all ambiguities in an insurance contract shall be construed most favorably to the assured. However, the words must be given their usual and ordinary meaning, and we may not strain their construction in order to perceive ambiguities."); *Pilz v. Monticello Ins. Co.*, 267 Ga. App. 370, 372, 599 S.E.2d 220, 222, *cert. denied* (2004) ("We will not strain to extend coverage where none was contracted or intended.") (citation and internal quotation marks omitted).  There is no ambiguity here.

The above-cited provision simply, and unambiguously, memorializes the understanding between the insured and the insurer regarding the possibility that the insurer will be required under a state or federal filing to pay a judgment against the insured for a liability which is not otherwise covered under the policy. By virtue of this provision, the insured accepts as a matter of contract that which is already a matter of law: that it is required to reimburse the insurer for any payments the insurer would not have been obligated to make but for the operation of the filing. For its part, the insurer agrees that it will pay no more than the minimum amount required by the applicable filing, thereby guaranteeing that the insured's reimbursement burden will be no greater than the minimum required by the filing.

In the present case, as demonstrated in Point III below, Progressive is not obligated to make any payments under its federal filing, because the Accident did not arise from the use of any motor vehicle in interstate commerce. Progressive's state filing, as discussed below, certifies only that Progressive will provide at least the minimum amount required by state law; in this case, $100,000 for the bodily injury or death of a single person, Melissa Kolencik. The above-cited provision does not, and cannot, affect Progressive's obligations under federal or state law.

## POINT III

## PROGRESSIVE HAS NO OBLIGATION UNDER ITS FEDERAL FILING TO PAY ANY JUDGMENT IN FAVOR OF PLAINTIFFS.

### A. Progressive's Federal Filing is Inapplicable Because The Accident Did Not Result From Negligence in the Use of a Motor Vehicle in Interstate Commerce.

On the date of the Accident, and for two and a half years before that time, T.I. Wood had no federal authority, and did no interstate business. Accordingly, to the extent that the Yarbrough trucks were operating in the business of T.I. Wood at the time of the Accident, that business was entirely intrastate, rather than interstate, in nature. All trips made by the Yarbrough trucks to carry cargo under dispatch by T.I. Wood were made between local points located entirely within the state of Georgia.

Since the vehicles involved in the Accident were engaged in intrastate commerce, Progressive's federal filing is inapplicable to any damages arising from the accident. Even prior to the enactment of the Motor Carrier Act of 1980, it was recognized that federal regulation of motor carriers did not generally extend to purely intrastate commerce. *See In re Grand Jury Subpoena Duces Tecum*, 405 F. Supp. 1192, 1195 (N.D. Ga. 1975) ("[I]t is manifest that regulation of intrastate transportation is excepted from the Commissioner's [of the then-existing Interstate Commerce Commission] authority...."); *accord, United States v. Southern Motor*

19

*Carriers Rate Conference, Inc.*, 1979 WL 1704 at *3 (N.D. Ga. Sept. 13, 1979) ("[C]ongress had expressly declined to extend the Commission's authority in intrastate trucking as far as had been granted over intrastate railroads.").

The language of the form BMC-91X, which Progressive filed with the USDOT on behalf of T.I. Wood pursuant to the Motor Carrier Act of 1980, provides:

> The receipt of this certificate by the Commission certifies that a policy or policies of Public Liability (or Automobile Bodily Injury and Property Damage Liability) insurance has been issued by the company identified on the face of this form, that the company is qualified to make this filing under Section 1043.8 or Section 1084.6 of Title 49 of the Code of Federal Regulations, *and they by the attachment of endorsement BMC 90, prescribed by the Interstate Commerce Commission, and/or an endorsement prescribed by the U.S. Department of Transportation (its MCS 90, or a form of similar import), is amended to provide the coverage or security for the protection of the public required under Section 10432 of Title 49 of the Code of Federal Regulations.* The amendment governs the operation, maintenance, or use of motor vehicles under certificate of public convenience and necessity or permit issued to the Insured by the Commission or otherwise in transportation subject to Subchapter II of Chapter 105 of Title 49, United States Code, and the pertinent rules and regulations of the Commission, regardless of whether such motor vehicles within the authority granted to the Insured by this Commission or elsewhere.

(Language of BMC-91X reported at 50 F.R. 40029, 40031, Appendix B, available on Westlaw at 1985 W.L. 197500, also reported at 48 F.R. 43331, 43335, Appendix A, available on Westlaw at 1983 W.L. 112103) (emphasis added).

The MCS-90 endorsement which, as noted above, is to be attached to a liability policy certified through filing the form BMC-91X, provides, in pertinent part:

20

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo.  It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company.  The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the   provisions of the policy except for the agreement contained in this endorsement.

(Emphasis added.)  The plain language of the MCS-90 endorsement, therefore, limits its applicability to judgments "recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980."  Sections 29 and 30 of the Motor Carrier Act are codified at 49

U.S.C. '31139, which provides, in pertinent part:

> **(b) General requirement and minimum amount.--(1)** The Secretary of Transportation shall prescribe regulations to require minimum levels of financial responsibility sufficient to satisfy liability amounts established by the Secretary covering public liability, property damage, and environmental restoration for the transportation of property for compensation by motor vehicle in the United States between a place in a State and--
>
> **(A)** a place in another State;
>
> **(B)** another place in the same State through a place outside of that State; or
>
> **(C)** a place outside the United States.

By its own terms, therefore, the Motor Carrier Act, and the financial responsibility regulations promulgated thereunder, are generally inapplicable to intrastate commerce. *See Progressive Casualty Ins. Co. v. Hoover*, 570 Pa. 423, 427, 809 A.2d 353, 355 (2002) ("[s]ince Sections 29 and 30 of the MCA pertained to certain matters involving interstate commerce. . . the [MCS-90] endorsement was therefore implicated in relation to [the insured's] truck only to the extent that it was operated . . . in furtherance of interstate commerce"); *Thompson v. Harco Nat'l Ins. Co.*, 120 S.W.3d 511, 516 (Tex. Ct. App. 2003), *cert. denied*, ___ U.S. ___, 125 S. Ct. 100, 160 L. Ed.2d 127 (2004) (MCS- 90 endorsement did not apply to extend coverage to non-scheduled vehicle where that vehicle was engaged in purely intrastate

transportation at the time of the accident); *General Sec. Ins. Co. v. Barrentine*, 829 So.2d 980, 983-84 (Fla. Ct. App. 2002) ("[f]orm MCS-90 applies only to interstate transportation and does not apply to intrastate transportation").

In *QBE Ins. Co. v. P&F Container Services, Inc.*, 362 N.J. Super. 445, 828 A.2d 935 (2003), the New Jersey appellate court identified three views espoused by other courts, regarding whether particular transportation was sufficiently "interstate" to implicate the MCS-90 endorsement:  (1) the endorsement applies to all vehicles operated by a registered interstate carrier on all trips in the course of its trucking business, including trips within the state;  (2) the endorsement applies only when the trip "involves" interstate commerce either because the vehicle was available for interstate transport pursuant to the lease or because the trip was one leg of a shipment that originated in or was intended for transport through interstate commerce;  or (3) the endorsement applies only when the trip itself either originated or was intended to conclude out of state.  *Id.*, 362 N.J. Super. At 452, 828 A.2d at 939.  (The *QBE* court determined that the second test was the law in New Jersey.)

Regardless of which test this Court adopts, the MCS-90 endorsement does not apply in this case.  T.I. Wood was not a registered interstate carrier at the time of the Accident.   The Yarbrough vehicles were not available for T.I. Wood to use in interstate commerce, since T.I. Wood did not and could not engage in interstate

commerce, and the Accident did not occur while the vehicles were involved in a shipment that originated in or was intended for transport through interstate commerce. Finally, the Yarbrough dump trucks were not involved in a shipment which either originated or was intended to conclude out of state. By any recognized legal standard, the Accident did not involve interstate commerce, and Progressive's MCS-90 endorsement does not apply.

**B.    Progressive's Filing is Inapplicable to the Judgments Against Cleckner and Burnam.**

By its own terms, the MCS-90 is attached to the policy, "to assure compliance <u>by the insured</u>, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act . . . ." (emphasis added).   That is, Progressive attached the form endorsement to ensure compliance with federal financial responsibility regulations by T.I. Wood.   Progressive ("the Company") agreed, under the term of the endorsement, to pay "any final judgment recovered <u>against the insured</u> for public liability resulting from negligence in the operation, maintenance or use of motor vehicles . . . regardless of whether or not each motor vehicle is specifically described in the policy" (emphasis added).   The terms and limitations of the policy, however, (including the limitation of coverage to vehicles scheduled on the policy) "remain in full force and effect as binding between <u>the</u>

insured and the company.  The insured agrees to reimburse the Company for any payment made by the Company on account of any accident, claim or suit involving a breach of the terms of the policy, and for any payment that the Company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement@ (emphasis added).

While reviewing a petition for certiorari in *John Deere Insurance Co. v. Nueva*, Supreme Court of the United States Docket No. 00-1491, a case from the Ninth Circuit Court of Appeals, the Court ordered the Solicitor General to express the views of the United States.  In response to that Order, the Solicitor General filed an amicus curiae brief on behalf of both the United States Department of Transportation, Federal Motor Carrier Safety Administration, and the United States Department of Justice.  (A copy of the brief is attached to Progressive's Notice of Filing, submitted herewith, as Exhibit "C.")  The amicus brief reflected the official position of the administrative body which both promulgated the MCS-90 endorsement, and is charged with enforcing the regulations underpinning that endorsement, and is therefore entitled to deference.  *See Auer v. Robbins*, 519 U.S. 452, 463, 117 S.Ct. 905, 912, 137 L.Ed.2d 79 (1997):

> Petitioners complain that the Secretary's interpretation comes to us in the form of a legal brief;  but that does not, in the circumstances of this case, make it unworthy of deference.  The Secretary's position is in no sense a

"post hoc rationalizatio[n]" advanced by an agency seeking to defend past agency action against attack, Bowen v. Georgetown Univ. Hospital, 488 U.S. 204, 212, 109 S.Ct. 468, 474, 102 L.Ed.2d 493 (1988).  There is simply no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question.

Petitioners also suggest that the Secretary's approach contravenes the rule that FLSA exemptions are to be "narrowly construed against ... employers" and are to be withheld except as to persons "plainly and unmistakably within their terms and spirit." Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960).  But that is a rule governing judicial interpretation of statutes and regulations, not a limitation on the Secretary's power to resolve ambiguities in his own regulations.  A rule requiring the Secretary to construe his own regulations narrowly would make little sense, since he is free to write the regulations as broadly as he wishes, subject only to the limits imposed by the statute.

In its amicus brief, the United States stated its view that the MCS-90 only applies to a final judgment against the named insured motor carrier:

> ...  It is true, as the court emphasized ... that the financial responsibility provisions of Title 49 (as they apply to both registered and unregistered carriers) and the Secretary of Transportation(s implementing regulations are intended to protect the public in the case of accidents involving vehicles owned or operated by commercial motor carriers....Contrary to the court of appeals' conclusion, however, existing federal regulations do not require a carrier's insurer to satisfy a judgment entered against any party other than the carrier itself.
> ...
> The regulations which make a motor carrier's insurer liable for judgments against the motor carrier are consistent with the regulations which make a motor carrier liable for injuries caused by its vehicles. It is not, however, central to the statutory or regulatory purpose that a member of the public be able to recover from a motor carrier's insurer for a loss that is not covered by the carrier's ordinary insurance policy, and

> that does not result in any legal judgment against the carrier. If the
> registered motor carrier is legally responsible (directly, indirectly, or
> vicariously) for injuries caused by the operation of one of its vehicles,
> then it should be possible for the injured party to obtain a judgment
> against the carrier. The federal financial responsibility provisions were
> designed to ensure the collectability of any such judgment, not to relieve
> the injured party from the obligation to obtain a final determination of
> legal liability ... or to vary the legal rules under which such a
> determination is to be made.

Finally, the United States contradicted the interpretation that the MCS-90 endorsement

somehow changes the definition of "the insured" in the policy itself:

> ... [T]he court [of appeals] concluded ... that the effect of the MCS-90
> endorsement is to modify the policy's definition of an insured, both with
> respect to the named insured and with respect to permissive users, by
> negat[ing] the limitation [in the policy language] the only users of
> "covered autos" are "insureds." That conclusion rests, however, on a
> fundamental misunderstanding of the endorsement.
>
> Form MCS-90 is not intended, and does not purport, to vary any term of
> the underlying coverage. To the contrary, the form specifically preserves
> those terms as between the insured and the named insured....The
> endorsement does require the insurer to pay certain judgments entered
> against the motor carrier, whether or not the events giving rise to the
> judgment come within the policy's coverage, and subject to
> reimbursement by the carrier if they do not. It does not, however,
> modify the policy's definition of an insured ... either with respect to the
> named insured or with respect to permissive users.

The majority of courts which have reviewed this issue have also found that a

final judgment against the named insured motor carrier is a prerequisite to recovery

under a federal filing. *See White v. Excalibur Ins. Co.*, 599 F.2d 50, 55 (5th Cir.), *cert.*

*denied*, 444 U.S. 965, 100 S. Ct. 452, 62 L. Ed.2d 377 (1979) ("The trial court correctly concluded that, insofar as Mrs. White seeks recovery solely under s 304(e), she is barred from recovering from Excalibur due to her failure to secure a judgment against the insured motor carrier. While such a judgment is unnecessary to recover under Ga. Code Ann. s 68-612, ... by the terms of 49 U.S.C. s 315 in order for Excalibur to be liable under the policy filed by Superior with the ICC, Superior must first be adjudicated liable as a party.....Her decision to sue only John Carroll Lindsey in state court precludes any relief in this action."). *See also Carolina Casualty Ins. Co. v. Insurance Co. of N. Am.*, 595 F.2d 128, 139 (3d Cir. 1979), *Wellman v. Liberty Mut. Ins. Co.*, 496 F.2d 131 (8th Cir. 1974); *Radman v. Jones Motor Co.*, 914 F. Supp. 1193, 1199-1201 (W.D. Pa.), *aff=d*, 100 F.3d 948 (3d Cir. 1996); *Pratt v. Andrews*, 164 Ill. App. 3d 606, 609, 518 N.E.2d 184, 186 (1987); *Nowak v. Transport Indem. Co.*, 120 Wis.2d 635, 358 N.W. 2d 294, 296 (Ct. App. 1984); *Transport Indem. Co. v. Teter*, 575 S.W. 2d 780, 785 (Mo. Ct. App. 1978) *Del Real v. United States Fire Ins. Crum & Forster*, 64 F. Supp. 2d 958 (E.D. Cal. 1998), *aff=d*, 188 F.3d 512 (9th Cir. 1999) (9th Circuit decision without published opinion).

Progressive's federal filing is inapplicable to any liability arising out of the Accident, because T.I. Wood was not involved in interstate commerce at the time. The federal filing is further inapplicable, because plaintiffs have not obtained a final

judgment against T.I. Wood. Progressive's obligation, if any, to pay a judgment arising out of the Accident in favor of plaintiffs arises exclusively under its state filings.

### POINT IV

**PROGRESSIVE'S OBLIGATION UNDER ITS STATE FILINGS, IF ANY, TO PAY A JUDGMENT IN FAVOR OF PLAINTIFFS IS LIMITED TO $100,000.**

Progressive issued commercial auto liability policy number CA 04196911-3 to Wood (the "Progressive policy"), which was in effect at the time of the Accident. Progressive also filed a "Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance," or "Form E," on behalf of Wood with the Georgia Department of Motor Vehicle Safety, which was in effect at the time of the loss.

The Form E certified that the Progressive policy had been "amended to provide automobile bodily injury and property damage liability insurance covering the obligations imposed upon such motor carrier by the provisions of the motor carrier law of the state...." Complementing the filing of the Form E certification with the DMVS (or PSC), a "Form F" endorsement was attached to the Progressive policy. The endorsement provides in pertinent part:

> The Certification to the policy, as proof of financial responsibility under the provisions of any State motor carrier law or regulations promulgated by any State Commission having jurisdiction with respect thereto,

amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby provided only that the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of the policy except by reason of the obligation assumed in making such certification.

Pursuant to the Form F filing and the Form E endorsement, therefore, Progressive agreed to provide insurance to T.I. Wood for automobile bodily injury and property damage liability in accordance with the provisions of, and to the extent of the coverage and limits of liability required by, Georgia law.  Georgia Public Service Commission ("P.S.C.") Rule 7-2.1, which was the regulation governing mandatory financial responsibility for motor carriers at the time of the Accident,[2] provided for a minimum limit of $100,000 for "bodily injury to or death of one person."

All of plaintiff's claims in this matter arise from bodily injury to and death of one person, namely Melissa Kolencik.  Consequently, Progressive's exposure under its state filing, if any, is limited to $100,000.[3]

---

[2] Plaintiff has incorrectly cited P.S.C. Rule 1-8-1-.01, which had been replaced effective August 1, 2000, with the above-cited rule.  At the time of the Accident, moreover, regulatory responsibility for intrastate motor carriers had been assumed by the Georgia Department of Motor Vehicle Safety.  It has since reverted to the Public Service Commission.

[3] As noted in Point III above, Progressive submits that its federal filing is inapplicable to the Accident.  Even if it were applicable, Progressive's exposure under the federal filing would not be stacked on top of its exposure under the state filing.  The state filing requires only that Progressive provide the minimum amount of financial

In his motion for summary judgment, plaintiff offers a web of arguments in support of his assertion that Progressive's exposure under its state filing exceeds $100,000.  Each strand of the web is without support in either law or public policy.  In the first place, plaintiff suggests that because two different claims and claimants (Melissa Kolencik's claim for bodily injury and Robert Kolencik's claim for wrongful death) arose out of the bodily injury and death of the same person (Melissa Kolencik), that Progressive's obligation under the state filing is doubled to $200,000.  The regulatory limit, however, is based on the number of persons who incur bodily injury or death (with a cap of $300,000 for a single accident), not on the number of claims or claimants seeking damages for injuries incurred by a single person.  *See Vassiliu v. Daimler Chrysler Corp.*, 178 N.J. 286, 293, 839 A.2d 863, 867 (2004) ("[W]e conclude that the 'person' referenced in Prudential's liability policy is the decedent in this case, not the decedent's estate or his heirs as reflected in plaintiff's survival and wrongful death actions.  Because the policy limits liability 'for all damages ... arising out of bodily injury to one person,' the total coverage is $15,000, the single 'per person' limit."; *Cochran v. Layrisson*, 859 So.2d 799, 802 (La. Ct. App. 2003) ("The parties do not dispute that only one person, Earl Cochran, Jr. sustained bodily injury in

---

security required under Georgia law, *i.e.*, $100,000 per person.  If Progressive provides that amount for whatever reason (coverage under the policy itself, obligation under federal filing), the Georgia statute is satisfied.

the accident and that Plaintiffs' wrongful death and loss of consortium claims seek damages they sustained as a result of the bodily injury to Mr. Cochran in the accident. Accordingly, we agree with Allstate that its policy limits Plaintiffs' recovery for all claims to the single $25,000.00 'Each Person' limit."); *cf. Hill v. Shelter Mut. Ins. Co.*, ___ So.2d ___, 2005 WL 1366528 at *10 (La. Ct. App. June 10, 2005) ("The policy language clearly limits Shelter's exposure for the wrongful death claims asserted by Mr. Cannon's children arising out of his fatal injury in the accident to a single each person limit...."). *Compare Driskell v. Empire Fire & Marine Ins. Co.*, *supra*. In *Driskell*, the court acknowledged that the insurer's exposure was limited to the amounts mandated under its state filing, because the vehicle involved in the accident was not scheduled on its policy. However, since two different plaintiffs (Edmund Harris and Christine Harris) were both injured in the accident, the mandated limits for each of them was $100,000, for a total of $200,000. In the present case, however, only Melissa Kolencik was in the vehicle involved in the Accident, and the mandatory limit is determined from her injuries alone.

Plaintiff asserts further that Progressive's exposure is doubled because, in a prior policy year, Progressive had made a state filing which was never formally canceled by filing a written notice of cancellation (or "Form K") with the state of Georgia. Nevertheless, P.S.C. Rule 7‑2.6(b) provides only:

Certificates of insurance evidencing coverage shall be continuous and shall not be canceled or withdrawn until after thirty (30) days' notice in writing by the insurance company, surety or sureties, motor carrier, or other party thereto, as the case may be, has first been given to the Commission at its offices in Atlanta, Georgia, which period of thirty days shall commence to run from the date such notice is actually received at the office of the Commission. Upon receipt of the notice, original stamped copy will be retained in the files of the Commission as evidence of the date of cancellation thereof and attached to the certificate of insurance or the surety bond.  Except that the Commission will waive the required thirty (30) days' notice where a motor carrier elects to substitute a certificate of insurance evidencing coverage for insurance previously filed by a different insurance company where such substituted certificate is accompanied by an affidavit of the motor carrier that substitution has been authorized by the motor carrier and that waiving of the thirty (30) days' notice is requested for the purpose of avoiding the payment of double insurance premium.

Pursuant to this regulation, a certificate of insurance (i.e., the state filing) cannot be canceled without written notice to the state.  Progressive, however, did not cancel its state filing for 2001, just as it did not cancel its policy for 2001 which was in effect during the earlier policy year.  Both the policy and the filing were renewed, and were both in effect at the time of the Accident.  (At no time since its inception would the Progressive policy issued to T.I. Wood have provided coverage for the Accident because the Yarbrough dump trucks never qualified as "insured autos.")

The purpose of the state filing is to certify to the state that a liability insurance policy has been issued to a motor carrier, which provides at least the minimum amount of coverage required by law.  *See Progressive Preferred Ins. Co. v. Ramirez*, 277 Ga.

33

392, 588 S.E.2d 751, 753 (2003) ("The certificate of insurance is not an insurance policy, but merely serves to assure the PSC that the motor carrier has complied with the requirement of providing either a surety bond or insurance for the protection of the motoring public.").  See also *DeHart v. Liberty Mut. Ins. Co.*, 270 Ga. 381, 385, 509 S.E.2d 913, 918 (1998) ("The continuous coverage regulation provides that it shall not be cancelled until thirty days after the insurance company gives written notice to the commission.  By its express terms, the regulation continues coverage until the PSC actually receives notice of cancellation.").  In both *Ramirez* and *DeHart*, however, the issue was whether a motor carrier's liability policy, which had been certified as proof of financial responsibility, remained in effect until notice of cancellation was filed with the P.S.C.  (Notably, the regulation in effect in both cases mandated that "policies of insurance" were continuous until written notice of cancellation was sent to the P.S.C.  The regulation in effect at the time of the present Accident only specified that certificates of insurance remain continuous until canceled.) The certification served to assure the public that a permitted motor carrier was financially responsible for liability incurred through its operations, and the written notice of cancellation was required to give the public advance warning if that financial responsibility was being withdrawn.

In the present case, by contrast, there is no question of required insurance coverage or a certificate of insurance having been canceled.  Progressive's insurance

coverage for T.I. Wood, and its certification of that insurance to the state of Georgia, remained continuous at all times relevant to this action.  Plaintiff has cited no case which supports his contention that policy coverage under a single policy which is renewed over several years, or that exposure pursuant to the same state filing which is renewed over several years, may be stacked because the insurer did not file written notice of a cancellation which never occurred.

Finally, plaintiff argues that Progressive's exposure under its state filing is doubled because two vehicles involved in T.I. Wood's motor carrier business were involved in the Accident.   Again, while the applicable regulation requires that financial responsibility (in the form of a bond, self-insurance, or indemnity insurance, see P.S.C. Rule 7-2.1) be maintained for liability arising out of every vehicle operated in the business of a permitted motor, the amount of that financial responsibility is based expressly on the number of persons injured, not on the number of vehicles which caused the injuries to the same person.  See *Inman v. Hartford Ins. Gp.*, 132 Mich. App. 29, 36-37, 346 N.W.2d 885, 889 (1984):

> Plaintiff's final contention is that, if the limits of liability clause is interpreted as only providing coverage up to the per person limit, the language is not enforceable in Michigan because the policy was issued under the statutory requirement of M.C.L. § 500.3101(1); M.S.A. § 24.13101(1).   Plaintiff argues that, by limiting the liability to the per person limit of $100,000, the insurer failed to provide the full measure of insurance coverage required by M.C.L. § 500.3101(1); M.S.A. §

24.13101(1).   This is clearly not tenable.   The insurer does not claim that only one vehicle or one driver was covered by the policy.   Rather, the insurer claims that both vehicles were covered by one policy which limits the liability to $100,000 for any one occurrence.   Therefore, the policy does not fail to meet the statutory requirement.   The lower court correctly determined that the limits of liability clause limiting the defendant's liability to $100,000 applies.

See also Infinity Ins. Co. v. Dodson, 302 Mont. 209, 225, 14 P.3d 487, 497 (2000):

> We can find no evidence that the Montana Legislature ever contemplated, let alone wished to require, that the minimum limits of liability under § 61-6-103, MCA, could or should be increased depending on the number of insureds found legally liable for causing one accident.   The overall purpose of the Act, as stated in its original title, was for the " elimination of reckless and irresponsible drivers of motor vehicles from the highways of the state of Montana."   *See Boldt v. State Farm Mut. Auto. Ins. Co.* (1968), 151 Mont. 337, 340-43, 443 P.2d 33, 35-36 (describing "general legislative intent in enacting the financial responsibility provisions of the Motor Vehicle Safety Responsibility Act").   This intent--to shield the public from reckless and irresponsible drivers--is expressed under the "each motor vehicle" limitation under § 61-6-103(2)(b), MCA, meaning each vehicle, regardless of ownership, must be covered by the mandatory liability limits when in use on the roadways of Montana.
> ...
> Therefore, the District Court's conclusion that, pursuant to the Motor Vehicle Safety-Responsibility Act, Infinity is obligated to pay the $50,000 policy limit on behalf of its insureds--and no more--is affirmed.

With respect to other types of mandatory coverage, Georgia courts also reject stacking of coverages for multiple vehicles covered under a single policy.  See *Georgia Farm Bureau Mut. Ins. Co. v. Owens*, 178 Ga. App. 446, 446, 343 S.E.2d 699, 700, *cert. denied* (1986) ("[W]here there is but one policy insuring multiple vehicles, as a

36

general rule no such stacking or pyramiding is permitted."); *accord*, *Young v. United States Fidelity & Guar. Ins. Co.*, 786 F. Supp. 600, 606 (S.D. Miss. 1991), *aff'd*, 963 F.2d 371 (5th Cir. 1992) ("The Georgia courts have noted that while stacking is available under multiple insurance policies, Georgia adheres to the general rule that no stacking is available under a single policy, regardless of the number of vehicles insured.").

The Progressive policy, under its own terms, provides no liability coverage to any person for damages arising out of the Accident.  Pursuant to the state filing Progressive made which was in effect at the time of the Accident, Progressive may be obligated to pay no more than $100,000 for damages arising out of the bodily injury and death of one person, Melissa Kolencik.  There is no basis in Georgia law for increasing Progressive's potential exposure beyond that amount.[4]

_____

[4] The Progressive policy provides further that:

> [i]f we are required by any applicable filing which we have made on your behalf to provide coverage not otherwise provided by this policy under this PART 1 - LIABILITY TO OTHERS, to any person or organization, the coverage provided hereunder for such person shall be the minimum coverage required by law.  If we are required to make any payment under this policy that would not have been made except for the certification, you must reimburse us.

Remarkably, plaintiffs assert that this policy provision somehow <u>increases</u> Progressive's exposure.  The plain language, however, clearly indicates to the insured that Progressive will pay no more than the statutory minimum where the policy

## <u>CONCLUSION</u>

For all of the above reason, Progressive respectfully requests that this Court deny plaintiff's motion for summary judgment and grant summary judgment in favor of Progressive, dismissing with prejudice all counts of the complaint against it and declaring that Progressive has no obligation to pay any judgment in favor of Kolencik for bodily injuries arising out of the Accident or the Kolencik action. Alternatively, Progressive requests that this Court grant summary judgment in favor of Progressive declaring that any obligation Progressive may have to pay any judgment in favor of Kolencik for bodily injuries arising out of the Accident or the Kolencik action is limited to $100,000.

SHUR, McDUFFIE & MORGAN

By:   s/Michael L. Morgan, Esq.

Michael L. Morgan (522865 GA. Bar No.)
380 Interstate N. Parkway - Suite 101
Atlanta, Georgia 30339
(770) 952-3895

provides no coverage but Progressive is obligated to pay a judgment pursuant to a filing.

Counsel for Defendant
Progressive Preferred Insurance Company


This certifies that pursuant to Local Rule 5.1 of the United States District

Court for the Northern District of Georgia, the above and foregoing Memorandum

Of Law In Opposition To Plaintiff's Motion For Summary Judgment And In

Support Of Crossmotion Of Defendant Progressive Preferred Insurance Company

has been prepared using Times New Roman font, 14 Point.

Dated: This  17 day of August, 2005.

SHUR, McDUFFIE & MORGAN


By:    s/Michael L. Morgan, Esq.

Michael L. Morgan (522865 GA. Bar No.)
380 Interstate N. Parkway - Suite 101
Atlanta, Georgia 30339
(770) 952-3895
Counsel for Defendant
Progressive Preferred Insurance Company

39

## CERTIFICATE OF SERVICE

This is to certify that I have this date served the within and foregoing **Defendant Progressive Preferred Insurance Company's MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF CROSSMOTION OF DEFENDANT PROGRESSIVE PREFERRED INSURANCE COMPANY** upon all parties by depositing a copy of same in the United States Mail in a properly addressed envelope with adequate postage thereon to ensure delivery to:

> Richard Hendrix, Esq.
> Finch McCranie, LLP
> 225 Peachtree Street, N.E.
> 1700 South Tower
> Atlanta, Georgia 30303
>
> Scott W. McMickle, Esq.
> Dennis, Corry, Porter & Smith, LLP
> Piedmont Fourteen
> 3535 Piedmont Road, Suite 900
> Atlanta, Georgia 30305

This the 17th day of August, 2005.

> Respectfully submitted,
>
> SHUR, MCDUFFIE & MORGAN

BY:    s/Michael L. Morgan, Esq.

Michael L. Morgan
Georgia Bar No.: 522865
Attorney for Defendant Progressive Preferred
Insurance Company

380 Interstate North Parkway
Suite 101
Atlanta, Georgia 30339
(770) 952-3895